## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 21 2020, 8:56 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William Ray Grimes,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

July 21, 2020

Court of Appeals Case No.
20A-CR-131

Appeal from the Sullivan Superior Court

The Honorable Hugh R. Hunt, Judge

Trial Court Cause No.
77D01-1809-F2-676

**Najam, Judge.**

## Statement of the Case

William Ray Grimes appeals his conviction by a jury for auto theft, as a Level 6 felony. Grimes presents one issue for our review, namely, whether the State presented sufficient evidence to support his conviction. We affirm.

## Facts and Procedural History

On September 12, 2018, Tonya Wolfe's brother-in-law, Joe Baxley, asked Wolfe to go to a yard sale near Sullivan, Indiana, to shop for furniture for his used furniture business. Baxley told Wolfe to drive his black Chevrolet Equinox. While she was at the yard sale, Wolfe received a message from Nancy Hood, Grimes's mother. Hood said that Grimes "was in Illinois" and wanted to "come over" to Indiana. Tr. Vol. II at 203. Wolfe had known Grimes for several years, and she considered him a good friend.

After Wolfe picked up Grimes, they went to Wolfe's house together. There, Grimes drank gin and became "inebriated." Tr. Vol. III at 23. He eventually told Wolfe that he wanted to leave, and they left in Baxley's Equinox with Wolfe driving. However, en route to Hood's home, Grimes got "agitated . . . [and] he was yelling out in the car." Tr. Vol. II at 204. Grimes then began to dig through Wolfe's purse and told her, "I thought you were better than this." *Id.*

When they reached Riverton, Indiana, on the Wabash River, Grimes asked to use Wolfe's phone to call Hood to pick him up and transport him the rest of the way. But Hood told Grimes that she could not pick him up, Grimes became

"really upset and agitated." *Id.* Nonetheless, Wolfe offered to take him back to Hood's residence. Wolfe testified that, at that point, she "wanted to take him back and get him out of the car . . . 'cause he was starting to scare me." *Id.* at 204.

[5] Instead, however, Grimes ordered Wolfe to "stop the car," and he told her, "I'm driving." *Id.* at 205. Wolfe did not want Grimes to drive, but he told her, "either get out or I'll take you out." *Id.* Wolfe acquiesced, and Grimes drove into Illinois.

[6] They arrived at Hood's residence soon thereafter. There, Grimes attacked Wolfe, hitting her in her head. Grimes also stabbed Wolfe's cell phone with a knife, almost tore one of her fingers "completely off," and threatened to cut Wolfe's throat. *Id.* at 208. Wolfe called out for help from Hood. Grimes then grabbed Wolfe by the throat and started to pull her out of the vehicle, at which point Wolfe lost consciousness.

[7] When Wolfe regained consciousness, she was in the vehicle and covered with blood. Grimes "was driving" and told her that she was "squirting blood and [she] need[ed] medical attention." *Id.* He also told Wolfe that he was driving her to a different house, and he told her to report the Equinox stolen. When they arrived at the house, Wolfe recognized the vehicles parked there as belonging to Grimes's cousin. Wolfe got out of the vehicle, and Grimes drove away. Wolfe then walked to a nearby house, where she called Baxley, who

picked her up. Wolfe eventually was treated at Regional Hospital in Terre Haute, where she received surgery to repair her finger.

[8] While Wolfe was at the hospital, Baxley spoke with Sullivan County Chief Deputy Jason Bobbitt and reported the Equinox stolen. OnStar was able to locate the vehicle in Riverton. The vehicle was in a grassy area beside the Wabash River. Officer Brandon Mullen found blood on the front passenger seat, steering wheel, roof, and along the outside of the vehicle. He also found Wolfe's broken cell phone case in the car, but he did not find her cell phone. Meredith Livingston from the Indiana State Police Laboratory identified the blood located on the steering wheel as Wolfe's.

[9] The State charged Grimes with auto theft, as a Level 6 felony. At his ensuing jury trial, Grimes testified that Wolfe drove him all the way to Hood's house in Illinois and that Wolfe was lying to avoid a probation violation for having crossed state lines. Wolfe testified that Grimes had seized the vehicle in Indiana, drove her to Illinois, and attacked her. The jury found Grimes guilty of auto theft, as a Level 6 felony. The trial court entered judgment of conviction accordingly and sentenced him to 910 days incarceration. This appeal ensued.

# Discussion and Decision

[10] Grimes contends that the State failed to present sufficient evidence to support his conviction for auto theft. As our Supreme Court recently stated:

When an appeal raises "a sufficiency of evidence challenge, we do not reweigh the evidence or judge the credibility of the witnesses . . . ." We consider only the probative evidence and the reasonable inferences that support the verdict. "We will affirm 'if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.'"

*Phipps v. State*, 90 N.E.3d 1190, 1195 (Ind. 2018) (quoting *Joslyn v. State*, 942 N.E.2d 809, 811 (Ind. 2011)). To prove that Grimes committed auto theft, as a Level 6 felony, the State was required to show that Grimes (1) knowingly or intentionally (2) exerted unauthorized control over (3) Baxley's Chevy Equinox (4) with intent to deprive Baxley of any part of the vehicle's value or use. Ind. Code § 35-43-4-2 (2020).

[11] Grimes does not contest that the evidence presented at trial established each element of auto theft, as a Level 6 felony. Instead, Grimes asserts that Wolfe was the only witness against him regarding who drove the Chevy Equinox from Indiana to Hood's residence in Illinois, which goes to the second element of the offense, and that "her testimony was inherently contradictory." Appellant's Br. at 10. Specifically, Grimes argues:

> Grimes and Hood both testified Wolfe did just as she told Grimes she would: she drove Grimes to his mother's home in Illinois. Yet Wolfe had an obvious motive to claim Grimes forced her to cross the Illinois state line. Her testimony that she began to do just as Grimes asked—to drive him to his mother's home in Illinois—but then suddenly Grimes told her not to because he would do it himself, was inherently contradictory and without credibility.

*Id.* at 10-11.  Grimes also asserts that "there was no circumstantial evidence to support [Wolfe's] testimony." *Id.* at 11.  In other words, Grimes contends that the State failed to present sufficient evidence to support his conviction because Wolfe's testimony was incredibly dubious.

[12]  As our Supreme Court recently stated:

> Under our "incredible dubiosity" rule, we will invade the jury's province for judging witness credibility only in exceptionally rare circumstances.  The evidence supporting the conviction must have been offered by a sole witness; the witness's testimony must have been coerced, equivocal, and wholly uncorroborated; it must have been "inherently improbable" or of dubious credibility; and there must have been no circumstantial evidence of the defendant's guilt.

*McCallister v. State*, 91 N.E.3d 554, 559 (Ind. 2018).  Our Supreme Court has also stated that the rule "'requires great ambiguity and inconsistency in the evidence'" and "'[t]he testimony must be so convoluted and/or contrary to human experience that no reasonable person could believe it.'" *Moore v. State*, 27 N.E.3d 749, 756 (Ind. 2015) (quoting *Edwards v. State*, 753 N.E.2d 618, 622 (Ind. 2001)).  "'[I]t is for the trier of fact to resolve conflicts in the evidence and to decide which witnesses to believe or disbelieve.'" *Id.* at 755-56 (quoting *Murray v. State*, 761 N.E.2d 406, 409 (Ind. 2002)).

[13]  Here, there were no contradictions in Wolfe's testimony.  Wolfe testified that she had agreed to drive Grimes to Illinois despite the fact that doing so would be a probation violation.  Wolfe also testified that, while she had agreed to drive

Grimes to Illinois, Grimes nonetheless threatened her to let him drive or he would "take [her] out." Tr. Vol. II at 205. She then explained that Grimes took control of the vehicle, drove to Hood's home, and attacked her. That testimony was not "'so convoluted and/or contrary to human experience that no reasonable person could believe it.'" *Moore*, 27 N.E.3d at 756 (quoting *Edwards*, 753 N.E.2d at 622).

[14] Moreover, Grimes's contention that there was no circumstantial evidence to support Wolfe's testimony is incorrect. Wolfe testified that, when they arrived at Hood's residence, Grimes attacked her, almost tore her finger off, and rendered her unconscious inside the vehicle. Officer Mullen later found Wolfe's blood inside and outside the vehicle, and Wolfe later received emergency medical treatment at Regional Hospital, which corroborated Wolfe's testimony.

[15] In sum, the incredible dubiosity rule does not apply here. Grimes relies on that rule in an attempt to circumvent the basic rule that, in sufficiency challenges, we cannot reweigh the evidence and assess the credibility of witnesses. Accordingly, we reject his argument on appeal and affirm his conviction.

[16] Affirmed.

Bradford, C.J., and Mathias, J., concur.